**OHIO BELL TELEPHONE COMPANY, In re.**

Public Utilities Commission.

No. 27400. Decided December 29, 1958.

A. M. Van Duzer, Carlyle Tresise and Latham Murfey, Cleveland, for Applicant, The Ohio Bell Telephone Company.

Ralph Locher, Andrew R. Sarisky, Law Director and Asst. Law Director, for City of Cleveland, Protestant.

M. J. Gilbert, Trial Counsel, for City of Dayton, Protestant.

Russell Leach, City Atty., William T. Gillie, Asst. City Atty., Ferd M. Pickens, Director of the Department of Public Utilities, for City of Columbus, Protestant.

John H. Zerbe, Asst. Director of Law, William M. Wasick, Director of Public Utilities, for City of Akron, Protestant.

Robert B. Konwin, Chief Counsel, for City of Toledo, Protestant.

Felix S. Mika, Law Director, for City of Youngstown, Protestant.

William Saxbe, Atty. Genl., By James F. DeLeone, Asst. Atty. Genl., for The Public Utilities Commission of Ohio.

### FINDING AND ORDER

The Commission coming now to consider the above entitled Application, the exhibits attached thereto and made a part thereof and the exhibits filed concurrently therewith, the matters contained in the

Report of the Secretary filed and issued under date of September 3, 1958, pursuant to the provisions of §4909.19 R. C., the testimony and exhibits introduced at public hearings held on October 21, 22, 23 and 24, 1958, and on December 8 and 9, 1958, and the Stipulation and Recommendation filed herein, and in compliance with §4903.09 R. C., hereby renders its Findings and Opinion.

**Nature of the Proceeding:**

The Applicant, The Ohio Bell Telephone Company, seeks to increase its rates and charges, to withdraw its Exchange Rate Tariff, P. U. C. O. No. 1 and to substitute therefor its proposed Exchange Rate Tariff, P. U. C. O. No. 2, to change its General Exchange Tariff, P. U. C. O., No. 3, its Message Toll Telephone Service Tariff, P. U. C. O. No. 6, its Private Line Tariff, P. U. C. O. No. 1, and its Mobile Telephone Service Tariff, P. U. C. O. No. 1.

**History of Proceedings:**

On February 3, 1958, The Ohio Bell Telephone Company, Applicant herein, filed with this Commission its Application to increase the rates and charges for telephone service rendered by it within the State of Ohio and to change its above-designated tariffs. Attached to and made a part of said Application were the following three exhibits:

**Exhibit A,** consisting of 4 volumes, including such of the Company's existing tariffs as the Company proposed to change;

**Exhibit B,** containing statements showing various of the existing and proposed rates and charges and amount of change therein; and

**Exhibit C,** consisting of 4 volumes, containing the Applicant's proposed tariffs.

In accordance with alphabetically enumerated **paragraph (A), (B)** and **(C)** of §4909.18 R. C., Applicant filed with its Application exhibits purporting to represent the following:

**Exhibit D,** consisting of 2 volumes and containing a detailed inventory of all of the property of The Ohio Bell Telephone Company in Account 100.1—Telephone Plant in Service, used and useful as of July 1, 1957, in rendering telephone service in the State of Ohio;

**Exhibit E,** consisting of 2 volumes and containing an appraisal of all of the property of The Ohio Bell Telephone Company in Account 100.1—Telephone Plant in Service, used and useful as of July 1, 1957, in rendering telephone service in the State of Ohio;

**Exhibit F,** containing a complete operating statement of the Applicant Company's last fiscal year, being the calendar year of 1957, showing its receipts, revenues and incomes from all sources, all of its operating costs and other expenditures;

**Exhibit G,** containing a statement showing Applicant's intrastate revenues, expenses and income available for fixed charges resulting from telephone operations for the calendar year 1957 (December estimated), with adjustments to the base period to reflect the full annual effect of changes in revenues and expenses which were not in effect for the entire base period and adjusted so as to place said base period on a going level of operations;

**Exhibit H,** containing a statement showing the additional operating

revenues anticipated under the Application resulting from the proposed rates and charges applied for therein; and

**Exhibit I,** containing a statement of the income and expense anticipated under the Application, with aforesaid Exhibit G modified to reflect the proposed increased rates and charges together with the increased expenses alleged to result therefrom.

On February 6, 1958, Applicant filed with the Commission a form of proposed legal notice and requested approval to publish said legal notice in accordance with the provisions of aforecited §4909.19 R. C.

Under date of February 7, 1958, the Commission issued its Order approving the form of legal notice submitted and authorized publication to be made.

Pursuant to the prescriptions of §4909.19 R. C., and the directives of this Commission, an investigation of the matters set forth in the Application, the exhibits attached thereto and the exhibits filed concurrently therewith, was caused to be made by the Secretary of the Commission. The Report thereof, containing the respective recommended findings of the Commission's Engineering and Accounting Staffs, was filed on September 3, 1958, and served by certified mail, as provided by said §4909.19 R. C., upon the mayors of all municipalities in the State of Ohio, upon the Prosecuting Attorneys of the 88 Ohio Counties, and upon other interested parties.

Within 30 days following the filing of that Report, known as the "Secretary's Report," objections were filed thereto by the Cities of Akron, Ashtabula, Cleveland, Cuyahoga Falls, Dayton, Maumee, Perrysburg, Springfield, Struthers, Toledo, and Youngstown. Objections were also duly filed by Applicant.

This matter was assigned for public hearing upon its merits before the Commission on October 21, 1958, and continued on October 22nd, October 23rd, October 24th, and on December 8th and 9th, 1958.

**Stipulation and Recommendation:**

On November 12, 1958, there was filed with this Commission a Stipulation and Recommendation which reads as follows:

### "STIPULATION AND RECOMMENDATION

"Now come The Ohio Bell Telephone Company, the Applicant herein, and the Cities of Akron, Cleveland, Columbus, Cuyahoga Falls, Dayton, Maumee, Springfield, Struthers, Toledo and Youngstown, Protestants herein, and stipulate and agree as follows:

"1. This Stipulation and Recommendation shall be filed in the foregoing case and by its filing each of the parties hereto offers it in evidence. The parties recognize that the Commission is not bound by the stipulations, agreements or recommendations of the parties.

"2. This Stipulation and Recommendation is made for the purposes of this case only. By its execution each party agrees that facts so stipulated and agreed upon shall not be deemed to be admitted or agreed upon in any other case, under any other circumstances or for any other purposes.

"3. The parties stipulate and recommend that the Commission fix, determine. and approve rates and charges which will produce, at the

station level of July 1, 1957, estimated additional annual revenue of $16,750,000 instead of $28,364,000 and order the Company to file Schedule Sheets which will accomplish this result.

"It is recommended that this Commission enter an order upon the law and the evidence embodying findings in accordance with the foregoing.

"It is further stipulated and agreed that no party hereto will appeal to the Supreme Court of Ohio from or directly or indirectly try to procure a review, rehearing or reconsideration of an order such as is recommended herein.

"IN WITNESS WHEREOF the parties have executed this Stipulation and Recommendation this 31 day of October, 1958.

> The Ohio Bell Telephone Company
> By /s/ L. T. PENDLETON
> City of Akron
> By /s/ JOHN H. ZERBE
> City of Cleveland
> By /s/ RALPH S. LOCHER
> City of Columbus
> By /s/ FERD M. PICKENS
> City of Cuyahoga Falls
> ELMER WOLF, Mayor
> By /s/ JOHN H. ZERBE
> City of Dayton
> By /s/ MAURICE J. GILBERT
> City of Maumee
> S. C. KLEWER, City Clerk
> By /s/ JOHN H. ZERBE
> City of Springfield
> R. E. WEHLER, City Solicitor
> By /s/ JOHN H. ZERBE
> City of Struthers
> T. MACEJKO, City Solicitor
> By /s/ JOHN H. ZERBE
> City of Toledo
> By /s/ ROBERT B. KONWIN
> City of Youngstown
> By /s/ FELIX S. MIKA"

In this connection it is to be noted that, while the number of telephones in those municipalities subscribing to said Stipulation comprise by far the largest part of Applicant's total telephones in service and provide Applicant with the largest proportion of its revenues, the foregoing Agreement does not negate the Commission's statutorily assigned duty in this proceeding and to make findings from the evidence recorded herein upon such fundamental subjects as may be required by law.

All findings in this opinion and order are for the purposes of this case only.

**Commission Review and Discussion:**

**1. Rate Base**

The Applicant, The Ohio Bell Telephone Company, submitted with

its Application exhibits purporting to constitute a detailed inventory and appraisal of its property used and useful in the rendition of telephone service within Ohio as of July 1, 1957. The depreciated reproduction cost new thereof estimated by the Application may be summarized as follows:

Reproduction Cost New (Inter and Intrastate) _____$832,100,938
Less Existing Depreciation (14.19%) _____ 118,062,072

Reproduction Cost New Present Value (Inter and
    Intrastate) _____$714,038,866
Statutory Rate Base Valuation as of July 1, 1957 _____$636,103,424
(89.09% of Total Valuation as being property used and
useful for Intrastate service in Ohio)

The independent investigation of the Commission's Engineering Staff disclosed that Applicant's R. C. N. (Reproduction Cost New) valuation as of July 1, 1957, should be adjusted in the following recommended particulars:

**Reductions**

Buildings _____$11,290,392
Central Office Equipment _____ 1,954,170
Station Apparatus _____ 182,810

    Sub-Total Reductions _____$13,427,372

**Additions**

Station Installations _____ 147,645
Total Reductions of Applicant's Proposed R. C. N.
Valuation _____$13,279,727

At the hearings, the Applicant introduced into evidence Conrad Exhibit No. 10 which set forth a revised estimated reproduction cost new present value of the property in Telephone Plant in Service, Account 100.1, as of July 1, 1957. This revised valuation gave effect to revisions in the reproduction cost new of Station Connections, the amount of depreciation claimed by Applicant to exist in Right of Way and in Furniture and Office Equipment, and applied revised intrastate property percents based upon the Company's actual results for the year 1957, omitting the month of September. Said Exhibit No. 10 was submitted in lieu of and in addition to Exhibit E, filed with the Application, which had set forth an estimate of the intrastate property percents for the month of December, 1957, but, which likewise omitted the month of September, 1957, by reason of the abnormal operations experienced during that period due to temporary labor difficulties. This revised proposed valuation, resulting in an aggregate increased intrastate RCNLD valuation of $134,900.00, may be summarized as follows:

Revised Reproduction Cost New (Inter and Intrastate) __$832,248,583
Less Revised Existing Depreciation (14.18%) _____ 118,036,076

Revised Reproduction Cost New Present Value (Inter
    and Intrastate) _____$714,212,507
Revised Statutory Rate Base Valuation as of
    July 1, 1957 _____$636,238,324

(89.08% of Total Valuation as being property used and useful for intrastate service in Ohio)

Physical inspections of the Company's property to determine depreciation due to existing mechanical deterioration were made by the Company by an inspection of samples of plant selected through the application by them of sampling plans prepared by Dr. W. Edwards Deming, a professor at New York University.

An independent inspection of Applicant's telephone plant to ascertain the depreciation therein due to existing mechanical deterioration and other observable causes of statutory depreciation (Par. E of §4909.05 R. C.), was likewise made by the Commission's Engineering Staff through the medium of selected samples of plant comparable to those proposed by Dr. Deming for the Applicant and approved by Dr. Ramson Whitney of The Ohio State University.

The Public Utilities Commission is expressly authorized by §4901.21 R. C., to enter into arrangements with The Ohio State University for the services of engineers and experts in other professional fields associated with and on the staff of The Ohio State University. Accordingly, the Commission entered into a contract with the University for technical services to be rendered through the Engineering Experiment Station of the College of Engineering. Under the contract the proposed sampling plans were analyzed and reviewed, at the request of the Commission's Chief Engineer by Dr. Whitney, a professor of mathematics. The formula and the selection procedure followed thereunder were found to be scientifically correct and technically appropriate for the purposes employed. The respective expert testimony of Drs. Deming and Whitney established that the results obtained from the inspections of appropriately selected samples of plant would, within very narrow limits, be the same as would be obtained from a 100% inspection by the same inspectors using on the 100% inspection the same definitions, methods of inspection and care as utilized on the inspection of the samples. This Commission recognizes that a properly conceived and applied inspection of less than all of a utility's property will result in great savings of time, money and effort to ratepayers, utilities and the Commission and that such procedure accords with accepted modern technical and business practice.

The Commission finds, perforce, that the use of sampling plans shown to be scientifically designed is sound and proper for employment both in the verification of most primary property accounts and in the determination of the observable causes of depreciation for most of the depreciable property accounts.

The Engineering Staff's recommended appraised valuation of Applicant's telephone plant depreciated as of July 1, 1957, may be summarized as follows:

Reproduction Cost New (Inter and Intrastate) _____$818.793.789
Less Existing Depreciation (21.02%) _____ 172,069,806

Reproduction Cost New Less Depreciation (Inter and
Intrastate) _____646,723,983

Statutory Rate Base Valuation as of July 1, 1957 _____$578,287,865
(89.42% of total Valuation as being property used
and useful for intrastate service in Ohio)

The Commission finds, upon review of the entire record pertinent thereto, that the statutory intrastate rate base for the purposes of this proceeding is not less than that appraised valuation depreciated as recommended by the Commission's Engineers in the amount of $578,-287,865 as of the date certain, July 1, 1957.

## 2. Rate of Return

The next subject to be considered by the Commission is the determination of the percentage that will constitute "a fair annual rate of return" to this Applicant upon the valuation of its property used and useful in rendering intrastate telephone services and will thereby represent a yearly "reasonable compensation for the service rendered." See §4909.15 R. C.; City of Cleveland v. P. U. C. O., 154 Oh St 442, 443-446; City of Marietta v. P. U. C. O., 148 Oh St 173.

On the subject of a fair rate of return attributable to its statutory rate base valuation as of the date certain, July 1, 1957, Applicant offered three witnesses. First, Dr. Herbert B. Dorau, a professor of Economics of New York University, testified that on the basis of cost of capital studies, it was his opinion that the current cost of capital as of July 1, 1957, was not less than 7.0% and that the fair rate of return as of July 1, 1957, and applicable to a reasonable period thereafter, was not less than 7.25% on the Company's statutorily determined rate base.

Dr. John K. Langum, an independent consultant associated with Indiana University, next testified that from a study of the rate of return earned by comparable unregulated industries on the current value of their properties, he was of the opinion that on a comparative basis the Applicant was entitled to earn about 7% on the current value of its property. He testified further that he had made cost of capital studies and that, in his opinion, the cost of capital to the Applicant as of July 1, 1957, was 6.95% applicable to its statutory rate base and that the fair rate of return to Applicant as of July 1, 1957, was about 7.0% on the present value of its property.

Applicant also offered the testimony of Mr. Everett D. Reese, Chairman of the Board of Directors of the Park National Bank of Newark, Ohio, who testified that it was his opinion that a fair rate of return to Applicant as of July 1, 1957, and for a reasonable period of time thereafter, would be at least 7.0% on the present value of its property.

William Wasick, Commissioner of Utilities for the City of Akron, also submitting extensive data by way of Akron Exhibit No. 1 relative to this Applicant utility's cost of money and the rate of return to which, in his opinion, the Company is entitled as of the date certain. Commissioner Wasick's opined testimony and supporting exhibitive data would evidence a somewhat lower rate of return than that to which company opinion witnesses testified.

The Company introduced in this connection Applicant's Exhibit No. 21, entitled "Revised Statement of Income and Expense Anticipated—Year 1957," which was prepared on the same basis as and to accord with

the Commission Accounting Staff Report attached to the Secretary's Report. This Exhibit gave effect to the additional income anticipated in accordance with the filed "Stipulation and Recommendation," and recorded additional estimated annual gross revenue in the sum of $16,743,069 instead of the sum of $28,363,706 shown on page 2 of Schedule No. 1 of said Accounting Staff Report incorporated in the Secretary's Report.

The Commission finds that the additional gross annual revenue of $16,743,069 set forth in Applicant's Exhibit No. 21 to be appropriately computed in accordance with accounting procedures approved heretofore by this Commission and would appear to represent a reasonable estimate of the additional gross revenue to be produced by the revised rates and charges as prepared in Applicant's Exhibit No. 19. It shows that when the income available for fixed charges, computed in the sum of $35,610,909 on the last line of Column (d) of that Exhibit, is related to the statutory rate valuation of $578,287,865 recommended by the Commission's Engineers, the rate of return thereon is 6.16%, and that when related to the like valuation of $636,238,324 claimed by Applicant in Conrad Exhibit No. 10, the resulting rate of return thereon is 5.60%.

Evidence submitted by Applicant purports to show that the increased rates and charges proposed in Applicant's Exhibit No. 19, consisting of schedule sheets containing the revised rates and charges which will produce as of July 1, 1957, the additional estimated revenue of $16,743,069, will not enable Applicant to earn either at the rate of 6.16% on the rate base recommended by the Commission's Engineers or at the rate of 5.60% on the rate base claimed by the Company. Applicant's exhibits show that between July 1, 1957 and July 1, 1958 the Company added to its Telephone Plant in Service, Account 100.1, over $53,000,000 worth of property; that the Company's claimed rate base valuation in Conrad Exhibit No. 10, which valuation was projected twelve (12) months to July 1, 1958, by adding gross additions at book cost and deducting plant retirements at the Company's proposed appraisal level, was $686,310,762 as of July 1, 1958; and, that the rate base valuation recommended by the Commission's Engineers, likewise projected to July 1, 1958, by adding gross additions at book cost and deducting plant retired at the Commission Engineers' recommended appraisal level, was $627,449,943 as of July 1, 1958.

The same company data also purports to evidence that Applicant's intrastate telephone operations for the period July 1, 1957, to July 1, 1958, fixed at the station level as of July 1, 1958, and reflecting the additional annual gross revenues recommended by the parties in the "Stipulation and Recommendation" filed herein, would afford income available for fixed charges in the amount of $36,612,095. On the basis of the foregoing data, it is contended that the rate of return to be realized by the Company upon its projected rate base valuation claimed in Conrad Exhibit No. 10, brought forth to July 1, 1958, would be 5.33%; and, that the rate of return to be realized upon the rate base, valuation recommended by the Commission's Engineers, likewise brought forth to July 1, 1958, would be 5.84%.

It is recognized that utility rates in Ohio are determined prospectively and become effective upon appropriate authorization of this Commission. **East Ohio Gas Co. v. P. U. C. O., 133 Oh St 212.** However, in view of the facts set forth upon the record herein relative to the test period, including the ascertainment of the income available for fixed charges in the amount of $35,610,909, it would not appear to serve any useful purpose to project either the estimated valuation of the company's intrastate plant or the revenues and expenses of this Applicant beyond the test period initially authorized. Nonetheless, such data, which has already been submitted upon the record, may be applied to evaluate comparatively the efficacy and general reasonableness of the Commission's ultimate findings in this proceeding.

In reply to questions from the Commission, Applicant's witness on revenues testified that the rate of return to be realized by Applicant and the anticipated annual return accruing to Applicant therefrom, would be sufficient for the Company to render the same level and character of telephone service, to maintain its telephone properties, to meet its fixed charges, and to do all requisite things dictated by sound management. (R 598-601.) It may be concluded, therefore, and the Commission so finds, that an annual rate of return of 6.16% on the above-ascertained statutory intrastate rate base valuation of $578,287,965 is not unreasonable, insufficient, excessive or unlawful under the facts and circumstances of this proceeding.

### 3. Dollar Annual Return

The "dollar annual return" of $35,610,909, as set forth on the last line of Column (d) of Applicant's Exhibit No. 21, is found by the Commission to represent a reasonable estimate of the yearly net compensation to be realized from the intrastate telephone services proposed to be rendered by this Applicant, after payment of operating expenses, including taxes and depreciation charges, which annual return would appear to be fair and reasonable under the circumstances of this proceeding.

### 4. Expenses

The Commission finds Applicant's operating expenses, including taxes and depreciation charges, anticipated at the level of the revised rates and charges proposed in Applicant's Exhibit No. 19 and reviewed hereinafter, to be in the aggregate amount of approximately $189,026,408 for the test period adopted for purposes of this proceeding.

### 5. Gross Annual Revenues

After considering the annual gross revenues and the annual return realized by this Company as of July 1, 1957, in light of its aforeascertained annual operating expenses, including taxes and depreciation, and its requirements for fixed charges, the Commission is of the opinion, and so finds herein, that the estimated annual gross revenue being realized by this utility from its existing level of rates and charges is insufficient under the facts of this proceeding to yield yearly reasonable compensation to this Applicant as of the date certain, July 1, 1957, for the intrastate telephone service which it proposes to render within this State.

The Commission finds further that the level of the revised proposed

rates and charges submitted by the Company and filed with this Commission will yield the Company gross annual revenues of approximately $224,637,317, subject to certain adjustments in said rate schedule as ordered below, which estimated gross revenues would appear to be just and reasonable under the facts of this proceeding.

### 6. Authorized Rates and Charges

It is to be noted that the "Stipulation and Recommendation," filed herein, pertained only to the aggregate of additional gross annual revenues to be realized by this Applicant, enumerated paragraph 3 thereof providing as follows:

"3. The parties stipulate and recommend that the Commission fix, determine, and approve rates and charges which will produce at the station level of July 1, 1957, estimated additional annual revenue of $16,750,000 instead of $28,364,000 and order the Company to file Schedule Sheets which will accomplish this result."

At the public hearings, objections were entered by counsel for some of the municipalities, who were parties to the "Stipulation and Recommendation," that certain of the revised rate schedules, proposed by the Company to produce the aggregate gross annual revenues agreed to in said Stipulation, were unreasonable. In general, counsels' respective contentions were based on variations in the percentage increases in the Company's proposed revised rates between specified residential and business service classifications, and that certain of the former classifications were raised percentage-wise more than the latter.

The Commission's responsibility in rate proceedings encompasses the reasonableness of **both** the overall gross revenues and the rate schedules requisite to produce such revenues. In the instant proceeding the Commission has found that the overall revenues recommended by the Stipulation appear to be reasonable. Analysis of the proposed revised rate schedules show that the level of said rates and charges produces approximately the gross annual revenues heretofore authorized. Thus, the Commission is now faced with considering the efficacy of the revised rate schedules filed herein and the reasonableness of the relationship by and between the various revised rate classifications therein proposed.

The Commission recognizes the many complex and practicable factors involved in the promulgation of appropriate rate schedules, as well as the fact that the design of rate schedules is necessarily subject, in part, to the prerogatives of management. It has been the Commission's policy, therefore, to afford utilities considerable latitude and discretion in the detailed design and formulation of the rate schedules required to produce the overall revenue found by the Commission to be reasonable. However, in those instances where it is ascertained that additional revenue is warranted but there exists an exceptionally wide deviation in percent increases in certain proposed rate schedules within a classification from the average percent increase in the other principal classifications, unless there is a showing that such deviation is reasonable, the Commission may require appropriate adjustments to be made in said schedules.

From an analysis of the revised rate schedules filed in this proceed-

ing, it would appear in some instances, particularly with respect to those rate schedules applicable to Applicant's service areas falling within Band VI and Band VIII, that the Company proposes to raise certain residential rates by a substantially greater percentage than the business rates. However, review of the rate increases authorized for this Company since World War II indicate that the cumulative percent increases to business service classifications have been generally somewhat greater than the percent increases to residential service classifications for the same period. No precise computation of the increases in these respective classifications can be made due to the variable factors associated with measured rate service and equipment charges. It would appear, nevertheless, that for each of the eight rate bands, the Company's proposed revised rates for business service reflect a larger percentage increase over 1948 rates than do the increases placed upon the residential service classification in those bands for the like period; and, that the revised rates proposed herein by the Company tend to narrow that percentage differential.

It is probable that the above observations do not hold in respect to every specific rate within a band as, for example, the residential measured rate in Band VIII. However, it appears that within each of the bands, including Band VIII, the rates for business service under the Company's proposed schedules will reflect percentage-wise a somewhat larger increase during the post-war period than the rates for residential service.

In view of the foregoing, the Commission is of the opinion that no adjustments in the Company's proposed business rate schedules are warranted and that any adjustments which may be ordered in the proposed residential rates should be made within the various residential rate schedules in the applicable band.

The type of an adjustment, as above discussed, would appear to be warranted in the revised measured rate for residential service in Band VIII as proposed by the Applicant. There are five residential rate classifications in this band, four being of the flat rate type and one being of the measured rate type. This latter type is applicable to about one-third of all residential service offered in this band. Since 1948, the measured rate has been increased percentage-wise substantially more than the flat rates, and the Company's proposed revised rate schedules further widen substantially this differential. The Commission is of the opinion, accordingly, that some adjustment is warranted in this particular instance, and so finds herein.

Analysis of the schedules in question would seem to indicate that to achieve a reasonable allocation of the overall increased revenue requirements from residential service in the areas listed in Band VIII, comprising the Cleveland Metropolitan Area and the Willoughby Exchange Area, an adjustment is necessary to the Company's proposed rates for residential service in four types of classifications: 1 Party, Trunk, 2 Party, and 2 Party Measured. The Company's proposed revised rates would increase charges to 1 Party, Trunk, and 2 Party customers in the order of 15%, while 2 Party Measured customers' charges would be increased in the range of from 21% to 52%, depending upon the number

of unit messages, exceeding 40 per month, chargeable to customers within this class of service.

The Commission is of the opinion, therefore, and so finds herein, that a more equitable allocation of the revenue requirements would be obtained by adjusting the Company's proposed revised rates through increasing the message allowance in the 2 Party Measured service from 40 to 50 messages, and by increasing the flat rates for 1 Party and for 2 Party by 10c per month, and by increasing the Trunk rate by 15c per month (there being only 35 Trunk customers). These adjustments will result in the 1 Party, 2 Party, and Trunk customers having an increase of approximately 17% instead of 15%, while the 2 Party Measured customers will have an increase in the range of 21% to 37% instead of an increase in the range of 21% to 52%.

As the foregoing adjustments will produce additional overall revenues somewhat in excess of the amount of such revenues heretofore found to be proper, it is necessary to make one further downward adjustment of approximately $35,000 in the Company's proposed revised rates. The Commission finds that elimination of the 5c Residence Additional Listing rate, together with the above adjustments, will produce additional overall revenues which will be substantially equivalent to the additional overall revenues heretofore found to be proper in this case.

### 7. Complaints of Ohltown and Chesterland Subscribers

The Honorable Thomas Gilmartin, State Representative for Mahoning County, appeared at the hearings herein in behalf of telephone subscribers residing in what is generally referred to as the Ohltown area, a portion of Austintown Township in Mahoning County situated between the cities of Niles and Youngstown. Representative Gilmartin requested that subscribers within the Ohltown area either be transferred from the Niles Exchange area to the Youngstown Exchange area or, in the alternative, that the Niles Exchange area receive extended area service to the Youngstown Exchange area.

It is to be noted that there is presently pending before this Commission a formal complaint proceeding, being designated as Case No. 27,889 on the Commission's docket, which pertains to the incorporation of the Ohltown area into the Youngstown Exchange area. Likewise, the Commission has previously considered, at least on an informal basis, the efficacy of extended area service between the Niles and Youngstown Exchange areas.

The Commission is of the opinion that proper disposition of the first question as to incorporation of Ohltown area into the Youngstown Exchange area can be effected more expeditiously in the presently pending complaint proceeding. However, with respect to the second question presented as to the furnishing extended area service between the Niles and Youngstown Exchange areas, the Commission is of the opinion that the Applicant, The Ohio Bell Telephone Company, should be required to reinstitute studies and subscriber-requirement analyses relative to the propriety of rendering such extended area service and, accordingly, report to this Commission the summarized results of their findings in this respect,

The Commission authorized representatives on behalf of the subscribers of Chesterland, an Exchange area situated between Cleveland and Chardon, to intervene in this proceeding and express their views relative to the limited local calling area established by this Applicant Company for the subscribers in the Chesterland Exchange area as well as their views relative to the present and proposed revised rates and charges applicable to the Chesterland subscribers.

The testimony and statements submitted in substantiation of this Complaint would appear to be insufficient to justify any determination thereon by this Commission at this time. The Commission, however, will retain jurisdiction of this matter and assign it for hearing in due course in a separate proceeding at which time all parties will be afforded opportunities to present full and complete evidence upon which the Commission may enter appropriate findings and Orders.

Nevertheless, the Commission is of the opinion, and so finds herein, that the Applicant Company should undertake an immediate study of subscriber calling requirements in the Chesterland Exchange area and file with this Commission the results of its findings in this respect.

**ULTIMATE FINDINGS—**

From the evidence, the Commission renders the following Ultimate Findings:

(1) That this Application is filed pursuant to, and this Commission has jurisdiction thereof under, the provisions of §§4909.17, 4909.18 and 4909.19 R. C.;

(2) That the Staff Investigation, required of the Commission by the provisions of aforesaid §4909.19 R. C., has been duly made, and the Report thereof has been filed and served as required by law;

(3) That the Applicant's statutory intrastate rate base valuation is not less than the sum of $578,287,865 recommended by the Commission's Staff Engineers, as of the date certain, July 1, 1957;

(4) That an annual rate of return of 6.16% on the above ascertained statutory intrastate rate base of $578,287,865, is not unreasonable, insufficient, excessive or unlawful under the facts and circumstances of this proceeding;

(5) That the dollar annual return of approximately $35,610,909, as of July 1, 1957, represents a reasonable estimate of the anticipated yearly net compensation to be realized by the Applicant herein from the intrastate telephone service proposed by it at the level of the revised rates and charges filed in this proceeding and authorized by this Commission subject to certain specified adjustments;

(6) That the dollar amount of the cost for Applicant to render its utility intrastate service, or its annual operating expenses, including all taxes and annual depreciation charges, is $189,026,408, as of July 1, 1957;

(7) That the allowable gross annual operating revenues, accruing to this Applicant from its intrastate telephone service as of July 1, 1957, are approximately $224,637,317, subject to certain specified adjustments designated herein;

(8) That the existing rates and charges now being charged and

collected by said Applicant in the territory served by it for the intrastate services rendered by it are insufficient to provide it with an adequate annual return on its property used and useful in the furnishing of such services; and,

(9) That the revised rates and charges, as set forth in the proposed schedule sheets included in Applicant's Exhibit No. 19, which the Applicant seeks to make part of its tariffs, are not unjust, unreasonable or excessive and will not provide the Applicant with an annual return in excess of that to which it is entitled upon the value of its property used and useful in the furnishing of intrastate telephone service in its service area, subject to the specific adjustments determined herein by the Commission with respect to 1 Party, Trunk, 2 Party, and 2 Party Measured Residential Service in Band VIII and to the Residence Additional Listing rate.

It is, therefore

ORDERED, That Applicant be and hereby is authorized to file all the revised rate schedule sheets contained in Applicant's Exhibit No. 19, subject to the specific adjustments found and ordered herein by the Commission, all of which revised rate schedules are hereby approved by the Commission upon the filing thereof with the afore-designated adjustments, said schedule sheets to contain a date upon which they shall become effective, which date shall be subsequent to the date of the filing of two complete printed copies of each of said schedule sheets with this Commission but shall not be earlier than the day following the date of this Order. It is further

ORDERED, That the within Order and all provisions thereof shall be effective forthwith.

THE PUBLIC UTILITIES COMMISSION OF OHIO

| Entered in Journal | Everett H. Krueger, Jr., Chairman |
| December 29, 1958 | Ralph A. Winter |
| A True Copy: | Edward J. Kenealy |
| W. E. Herron, Secretary | Commissioners |